**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 19-153-DLB-CJS**

**STANLEY GAHMAN**                                                                              **PLAINTIFF**


**v.**                                          **MEMORANDUM OPINION AND ORDER**


**BST NORTH AMERICA, INC.**                                                                    **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.      INTRODUCTION

This matter is before the Court on Defendant's Motion for Partial Summary Judgment in this age discrimination and breach of contract case (Doc. # 24).  The Motion has been fully briefed, (Docs. # 29 and 32), and is now ripe for the Court's review.  For the reasons set forth herein, Defendant's Motion for Partial Summary Judgment is **denied**.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Stanley Gahman filed the instant action in Kenton Circuit Court on September 18, 2019 against Defendant BST North America, Inc. ("BST"), his former employer, asserting an age discrimination claim under the Kentucky Civil Rights Act ("KCRA"), Ky. Rev. Stat. §§ 344.010, *et seq.*, and a Kentucky common-law breach of contract claim.  (Doc. # 1-2 ¶¶ 1, 8, 11-21).  BST sells and services quality assurance systems for the printing industry throughout North America.  (Doc. # 25-21 at 1).  On October 25, 2019, Defendant BST removed the case to the Eastern District of Kentucky.  (Doc. # 1).  Thereafter, Defendant BST moved for summary judgment on Gahman's age

discrimination claim under the KCRA. (Doc. # 24). Plaintiff responded, (Doc. # 29), and Defendant replied, (Doc. # 32). The underlying Motion is now ripe for the Court's review.

At the time of Plaintiff Gahman's firing, he was working for Defendant BST as a Regional Sales Manager. (Doc. # 1-2 ¶ 5). Gahman was seventy-three years old. (*Id.* at ¶¶ 7, 14). On or about December 14, 2018, Gahman was fired by Mark Lambrecht, the President of BST. (*Id.* at ¶¶ 6-7). Immediately after Plaintiff's discharge, he was replaced by Kim Hocking, a fifty-nine-year-old who Lambrecht requested Plaintiff to train. (Docs. # 1-2 at ¶ 16 and 29-3). In Gahman's role as Regional Sales Manager, Gahman sold BST products within a specific territory. (Doc. # 25-25 at 32-33). Gahman reported to Paul Henke and Ernest Schneider, who each supervised a separate product line at BST. (Doc. # 25-24 at 20).

In late 2017 and early 2018, Lambrecht determined that because the equipment that BST salespeople were selling had become more technical in nature, BST could remain competitive by creating a "stronger technical sales force." (Doc. # 25-23 at 16-18). As this plan was implemented, Lambrecht anticipated that members of the current sales team would be affected once BST began to hire a more technical sales team. (*Id.* at 18). Even though Lambrecht stated that Gahman was terminated due to a lack of technical skills, he could not point to specific technical skills that Gahman lacked that made him unqualified to continue working as a salesperson. (*Id.* at 12, 18-19). However, Lambrecht cited customer concerns with Gahman's performance, a lack of communication skills, and dependence on other BST employees, as alternative reasons for terminating Gahman. (*Id.* at 23-24). Lambrecht had warned Gahman about a "lack of professionalism" in his emails, (Doc. # 25-2), including Gahman's usage of "little or no

punctuation," and an inability to identify the purpose of an email.   (Doc. # 25-3). Additionally, Gahman's dependence on other team members to assist him in selling newer products was causing frustration with other team members.  (Doc. # 25-24 at 45-47).   However, during Gahman's employment at BST, Lambrecht only addressed his dislike for his email habits and did not mention any customer complaints directly to Gahman.  (Doc. # 29-8 ¶ 34).  In fact, Lambrecht had previously praised Gahman for doing "a superb job of representing BST" with Nilpeter US, one of BST's clients.  (Docs. # 29-4 at 1).

In January of 2018, Gahman met with Lambrecht, who indicated that several people, including Gahman, needed to retire and expressed concerns that although BST was doing well, Lambrecht disliked that BST had an "aging workforce."  (Doc. # 25-25 at 59-60).   Lambrecht does not recall if he made this comment.  (Doc. # 29-15).  Also in early 2018, Lambrecht informed Gahman that his job was going to be eliminated by the end of the year.  (Doc. # 25-23 at 29-30).  Gahman indicated that he did not want to retire. (*Id.* at 30).  On July 12, 2018, Plaintiff's Sales Manager, Ernest Schneider, allegedly asked Plaintiff "why don't you quit or retire?"  (Doc. # 32-2 at 5).  On July 22, 2018, Lambrecht sent an email to Gahman mentioning that earlier in the year they had "talked about the timing of [Gahman's] retirement plans" and that the transition process needed to begin months in advance, with a target for the transition to be complete at the end of 2018. (Doc. # 25-10 at 3).  Gahman again reiterated that he did not want to retire.  (*Id.* at 2).  At that point, Lambrecht relayed to Gahman that he was not asking for Gahman's permission, but rather his support during the transition process.  (*Id.*).  In August of that same year, Lambrecht invited Gahman to attend a lunch to discuss his transition plan.

(Doc. # 25-11 at 1).  During this lunch, Gahman recalls that BST's transition plan was not discussed, except to the extent it directly involved Gahman's retirement.  (Doc. # 25-25 at 68-70).  Again, Lambrecht asked Gahman why he didn't want to retire and "don't you have other retirement plans?"  (*Id.* at 72).  Gahman also recalls Lambrecht informing him that Hocking would be taking over his territory, and Lambrecht asking Gahman to introduce Hocking to various customers.  (Doc. # 25-25 at 71).  When Gahman began introducing Hocking to the clients he previously served, Gahman introduced Hocking as his replacement and informed the customers that he would be retiring.  (*Id.* at 72-73).  From Gahman's perspective, Lambrecht never informed him that BST was transitioning to a more technical salesforce, and instead only discussed Gahman's retirement plans and how BST had many people who needed to retire.  (*Id.* at 74-76).

On October 31, 2018, Mary Khamphouy, a Human Resources Generalist with BST, emailed Gahman a Severance Agreement ("the Agreement"), which Khamphouy requested he sign.  (Doc. # 25-12).  The Agreement noted that Gahman would be terminated effective December 31, 2019, released BST of any legal claims Gahman may have against it, and offered a severance package of $11,769.24, which is equivalent to twelve weeks of pay.  (*Id.* at 2).  On November 20, 2018, Gahman responded by email informing Kamphouy and Lambrecht that he "do[es] not accept the offer to retire and h[as] no intentions to retire and [] will continue working for BST North America as long as [his] health permits."  (Doc. # 25-13 at 1).  Lambrecht responded informing Gahman that this was not an offer to retire, his position of Regional Sales Manager was "being phased out," and stated that BST is transitioning a number of sales team members by the end of the year.  (*Id.*).  Ultimately, in December of 2018, Lambrecht informed Gahman that his

relationship with BST was ending and he would be paid through the end of the year.  (Doc. # 25-25 at 75).

## III.    ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact."  *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)).  In deciding a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party, summary judgment is appropriate."  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

#### 1.    *Age Discrimination Claim*

Defendant BST argues that Plaintiff's age discrimination claim fails because Gahman was terminated "as part of a broader initiative to transition the BST sales team to a more technical concept."  (Doc. # 26 at 14).  Because of this, BST maintains that Gahman's age could not be the but-for cause of his termination.  (*Id.*).  Instead, BST

points to Gahman's poor technical skills, complaints by customers, and dependence on other sales team members to assist him, as alternative reasons for his termination.  (*Id.*).

Kentucky courts have adopted the federal standards used in assessing claims brought under the Age Discrimination in Employment Act ("ADEA") for age discrimination claims brought under the Kentucky Civil Rights Act ("KCRA").  *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008).  The KCRA provides that it is unlawful for an employer to terminate an individual "because of the individual's . . . age forty (40) and over."  KRS § 344.040(1)(a).  A plaintiff must prove that his age "was a determining factor in the adverse action that the employer took against him."  *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993) (citing *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229-30 (6th Cir. 1990)).  While there is not a "fixed, easy formula to prove the circumstances of the discrimination . . . our review must start somewhere."  *Id.*  A plaintiff may establish an age discrimination claim by either direct or circumstantial evidence. Direct evidence "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Allen*, 545 F.3d at 394 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)).  Alternatively, circumstantial evidence "does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."  *Id.*

While Plaintiff does not explicitly state whether his suit is based on direct or circumstantial evidence, to substantiate his age discrimination claim, Plaintiff points only to comments made by Lambrecht about an "aging" workforce and Plaintiff's retirement. (Doc. # 29 at 4).  Comments regarding retirement or an aging workforce do not typically constitute direct evidence of age-based discrimination.  *Rowan v. Lockheed Martin*

*Energy Sys., Inc.*, 360 F.3d 544, 549 (6th Cir. 2004).  In *Rowan*, former employees of Lockheed Martin sued Lockheed following their managers' statements about an aging workforce and retirement.  *Id.* at 546.  Ultimately, the district court granted summary judgment to Lockheed Martin and the Sixth Circuit affirmed.  *Id.* at 547.  In doing so, the Sixth Circuit acknowledged that the ADEA was not intended "to prevent an employer from achieving a reasonable age balance in [its] employment structure," and "recognized that at times an industry may be faced with the problem of an aging work force, and advised that such situations be treated 'on a case-by-case basis.'"  *Id.* at 548-49 (quoting *Laugesen v. Anaconda*, 510 F.2d 307, 312 n.4 (6th Cir. 1975)).  In *Rowan*, it was determined that Lockheed Martin was understandably concerned with skilled workers retiring, and in that context, "statements about average age do not amount to direct evidence of discrimination."  *Id.* at 549.  Similarly under the ADEA, "questions concerning an employee's retirement plans do not alone constitute direct evidence of age discrimination."  *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012).  However, when comments are made by the individual responsible for a plaintiff's firing, there may be sufficient direct evidence to establish an age discrimination claim.  *Geiger v. Tower Auto.*, 579 F.3d 614, 620-21 (6th Cir. 2009) ("Any discriminatory statements must come from decisionmakers to constitute evidence of discrimination.").

Here, because Lambrecht's concerns regarding an aging workforce could be rooted in a concern for the future of BST, they do not constitute direct evidence of age discrimination.  Along those same lines, questions regarding Gahman's retirement also cannot be considered direct evidence of age discrimination.  Lambrecht's statements about an aging workforce and Gahman's retirement on their face do not *require* a

conclusion that discriminatory intent was the motivating factor in Gahman's termination. However, depending on the evidence, "such statements might be suspicious enough to make out a prima facie case of discrimination." *Id.* Therefore, Gahman may depend on circumstantial evidence to support his age discrimination claim. In order to do so, he must follow the burden-shifting framework in *McDonnell Douglas*. *Allen*, 545 F.3d at 394 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Under *McDonnell Douglas*, a plaintiff first must establish a prima facie case of age discrimination. *Id.* A prima facie case requires Plaintiff to show: (1) he is a member of a protected class, (2) qualification for the job in question, (3) adverse employment action, and (4) circumstances that support an inference of discrimination. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). In the context of age discrimination, element four is modified to require a showing by a plaintiff that he was replaced by a younger worker, or alternatively, that he was treated less-favorably than similarly situated employees. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008); *Flock v. Brown-Forman Corp.*, 344 S.W.3d 111, 115 (Ky. Ct. App. 2010). "Once a plaintiff satisfies his or her prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional age discrimination." *Allen*, 545 F.3d at 394 (internal citation omitted) (quoting *Ercegovich*, 154 F.3d at 350).

Here, Defendant argues that Gahman cannot establish a prima facie case of age discrimination. (Doc. # 26 at 20). Namely, Defendant argues that Gahman was not

qualified for the job and failed to identify similarly situated employees with different outcomes. (*Id.* at 20-21). Each of these arguments will be discussed in turn.

As for Plaintiff's qualification for the job in question, Defendant confuses the applicable standard. At the prima facie stage, a court must only determine "a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler*, 317 F.3d at 576. Therefore, a plaintiff can meet his prima facie burden as to qualification by "presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field . . . [T]he inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* Contrary to Defendant's argument, Plaintiff does not have to show that "he was meeting legitimate employment expectations." (Doc. # 26 at 20). Any argument by a defendant that a plaintiff is unable "to carry out his job functions in a satisfactory manner . . . impermissibly conflates the non-discriminatory reasons for termination with the qualifications for the job." *Gaglioti v. Levin Grp., Inc.*, 508 F. App'x. 476, 480 (6th Cir. 2012) (citing *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000)); *see Speck v. Agrex, Inc.*, 888 F.Supp.2d 867, 878 (N.D. Ohio 2012) (stating that a plaintiff's poor performance "might mean [he] was bad at his job, but it does not make him unqualified").

In conjunction with its Motion for Summary Judgment, Defendant filed a job description for a Regional Sales Manager at BST. (Doc. # 25-1). The objective requirements of the position include: (1) three years in sales within industry and (2) a bachelor's degree in business/marketing or equivalent. (*Id.*). Also included are a number

of general skills, like strong communication, proven negotiation skills, and experience as a sales manager consistently meeting or exceeding targets. (*Id.*). While this job description provides relevant context to the underlying issue, Plaintiff need only show he meets the "minimum objective criteria required for employment in the relevant field." *Wexler*, 317 F.3d at 576. There is no factual dispute as to whether Gahman had three years of experience in sales within the industry; in fact, he had been a salesperson for BST for twenty years. (Docs. # 1-2 ¶¶ 7, 9 and 25-25 at 18). The second requirement, that a candidate have a bachelor's degree *or equivalent* poses a more difficult question. Unfortunately for the Court, the parties have both failed to provide any briefing regarding what the phrase "or equivalent" means in this context. Plaintiff argues that he was in fact qualified to continue in the role of salesperson "based upon his twenty years as a sales representative." (Doc. # 29 at 7). Certainly, it would seem that an individual without a college degree could be qualified to be a sales representative so long as he could point to other relevant experience. In this setting, it is relevant that there has been a noticeable shift in educational attainment between 1999, when Gahman was hired as a sales representative, and 2018, when Gahman was fired. While it is unclear whether Gahman has a bachelor's degree, if BST was willing to accept a bachelor's degree *or equivalent*, it seems that Gahman would meet the qualifications of the job by virtue of his twenty years of relevant experience.[1] Thus, at a minimum, genuine issues of fact remain regarding

---

[1] A well-recognized job search site, indeed.com, discussed the "bachelor's degree or equivalent" phrase often used in job postings. *What Is a Bachelor's Degree or Equivalent?*, INDEED (March 9, 2021), https://www.indeed.com/career-advice/finding-a-job/bachelors-degree-or-equivalent. As explained by the article, "or equivalent" means that a candidate "may replace part, or sometimes all, of the educational requirements with the knowledge [they] possess from work or other experiences in that field or a related field." *Id.*

whether Gahman has met his prima facie burden of proving he was qualified for the sales representative position.

Next, Defendant argues that Plaintiff failed to identify similarly situated individuals with different outcomes. (Doc. # 26 at 21). However, Plaintiff need not identify a similarly situated individual if he can instead illustrate that he was replaced by a younger employee. *Mickey*, 516 F.3d at 521-22; *Flock*, 344 S.W.3d at 115. Defendant argues that Hocking was not similarly situated or a replacement for Plaintiff because of Hocking's qualifications, lack of similar communication problems, his ability to perform without the help of other team members, and his lack of complaints from customers. (Doc. # 26 at 21). However, all Plaintiff must show to meet his prima facie burden is that he was replaced by someone significantly younger, not that he was more qualified than Hocking. "A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)); *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 496 (Ky. 2005). The fact that a worker was replaced by someone insignificantly younger is not "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *Grosjean*, 349 F.3d at 336 (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)). In other words, the age difference between a plaintiff and his replacement must be significant. "Age differences of ten or more years have generally been held to be sufficiently substantial to meet the fourth part of age discrimination prima facie case." *Id.* This ten-year standard established in federal court has not been settled by the Kentucky Supreme Court, but the Kentucky Supreme Court has established that the hiring of

11

multiple individuals at least eight years younger than plaintiff was enough to meet the significance requirement.  *Williams*, 184 S.W.3d at 496-97.

Here, the record shows that Hocking was in his late-fifties, maybe sixty, while Plaintiff was seventy-three at the time of his firing.  (Docs. # 1-2 ¶¶ 7, 14 and 25-23 at 31).  Assuming that Hocking was sixty when he was hired, that would mean a thirteen year age difference between Plaintiff and Hocking.  Viewing the evidence in a light most favorable to Gahman, this establishes that he was replaced by a substantially younger individual.  Defendant makes much of the fact that Hocking was hired as a new "Technical Sales Manager" and therefore did not replace Gahman.  (Doc. # 26 at 2).  Lambrecht personally believed that BST needed to transition to a "stronger technical sales force" and thus wanted to transition BST from having Regional Sales Managers to having Technical Sales Managers.  (Doc. # 25-23 at 17-19, 53).  However, the record, taken in the light most favorable to Plaintiff, establishes that Hocking was performing virtually the same job duties as Gahman, regardless of any change in title.  For example, Lambrecht could not describe any differences between Hocking's job duties and that of a regional manager.  (*Id.* at 53-54).  Similarly, when Hocking began working at BST, Gahman was responsible for traveling with him so that Gahman could introduce Hocking to the customers he would be working with—customers that were previously serviced by Gahman.  (Docs. # 29-28 at 1-2, 25-23 at 30-31, and 25-25 at 71).  Gahman's deposition further states that Lambrecht told him that Hocking was "taking the territory over."  (Doc. # 25-25 at 71).  The only difference found in the record between a "Regional Sales Manager" and a "Technical Sales Manager" is that the Technical Sales Managers were no longer assigned a specific region to service.  (Doc. # 29-28 at 1).  Because Gahman was able to show he

was replaced by a significantly younger individual, he has met his prima facie burden for an age discrimination claim.  Under *McDonnell Douglas*, the burden now shifts to BST to provide a legitimate, nondiscriminatory reason for Plaintiff's termination.  *Allen*, 545 F.3d at 394 (quoting *Ercegovich*, 154 F.3d at 350).

BST argues that the reason for Plaintiff's termination was "the transition to the new technical sales model and Plaintiff's own deficiencies and complaints."  (Doc. # 26 at 21). However, as indicated by BST in its answers to Plaintiff's interrogatories, Plaintiff's termination was due to restructuring BST's sales team:

> Plaintiff's position was eliminated pursuant to a sales department restructuring.  He was notified of this as early as January 2018 and was later offered a formal severance agreement on October 31, 2018.  Plaintiff refused the severance, and his position was later eliminated.

(Doc. # 29-12 at 1).  In another answer to Plaintiff's interrogatories, Defendant again reiterated this reasoning:

> [Plaintiff's] position with the company was being eliminated at the end of 2018.  Part of the reason for this [was] to provide BST's customers with more technically capable sales people and reduce sales staff's reliance on other technical staff.  Due to Plaintiff's poor technical performance and his failure to have a strong grasp of the engineering aspects of the position, BST determined that he would not be qualified to be part of the new sales team structure.

(*Id.* at 3).  To bridge these gaps, Defendant says that Gahman's "poor performance, poor customer satisfaction, and poor communication led to the decision to terminate his employment as part of the restructuring."  (Doc. # 26 at 7).  In offering a legitimate, non-discriminatory reason for a plaintiff's termination, "the defendant bears only the burden of production and this involves no credibility assessments."  *Charalambakis v. Asbury Univ.*, 488 S.W.3d 568, 577 (Ky. 2016) (quoting *Williams*, 184 S.W.3d at 497); *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009).   Regardless of whether Gahman's

termination was due to the restructuring of the sales department or due to poor performance, both of these motives are undoubtedly legitimate, non-discriminatory reasons to terminate an employee. BST has met its burden by pointing to testimony that Plaintiff demonstrated poor communication skills, (Doc. # 25-23 at 33-35), and was the subject of customer complaints leading up to his firing, (Docs. # 25-6 and 25-24 at 45).

Following the production of a legitimate, non-discriminatory reason for a plaintiff's termination, plaintiff must establish that the defendant's proffered reason is merely pre-text for discrimination. *Charalambakis*, 488 S.W.3d at 578. Plaintiff can demonstrate pre-text by one of the three methods established in *Manzer v. Diamond Shamrock Chemicals*: "(1) the proffered reasons are false; (2) the proffered reasons did not actually motivate the decision; and (3) the plaintiff could show that the reasons given were insufficient to motivate the decision." *Williams*, 184 S.W.3d at 497 (citing *Manzer v. Diamond Shamrock Chems., Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)). On summary judgment, a court "simply engage[s] in the conventional review of the sufficiency of evidence to defeat a summary judgment motion." *Charalambakis*, 488 S.W.3d at 578. In the Court's view, Gahman has established that there is a genuine issue of material facts as to whether BST's reason for termination was pre-text for age discrimination.

Here, Gahman presents evidence that BST's reasoning for terminating him did not actually motivate its decision. (Doc. # 29 at 21). Gahman points out that Defendant's answers to interrogatories specifically cite his "poor technical performance" as the reason for his termination. (*Id.*). The Court likewise acknowledges that BST also stated that Gahman was terminated due to the restructuring of the sales department. (Doc. # 29-12 at 1).

14

During Lambrecht's deposition, he could not identify any technical knowledge that Gahman lacked, (Doc. # 25-23 at 12, 18-19, 23), and instead only pointed to Gahman's dependence on technical team members, (*Id.* at 50-51).  Defendant instead argues that while Lambrecht may not have direct experience regarding Gahman's issues, he consulted with Schneider and Henke about the "transition plan" underlying the restructuring of the sales department and Gahman's termination.  (Doc. # 32 at 11). Lambrecht testified that he informed Schneider, Henke, Vanderpoel, and Khamphouy that BST would be terminating Gahman, and they were each in agreement.  (Doc. # 25-23 at 42-43).  Specifically, Defendant points to Schneider's experience with Gahman's "problems firsthand" as a reason for Lambrecht to fire Gahman.  (Doc. # 32 at 11). However, this is unsupported by both Lambrecht's and Schneider's testimony.  Lambrecht specifically testified that Schneider did not provide Lambrecht with any specifics about why Gahman should be fired.  (Doc. # 25-23 at 47).  Schneider further testified that Lambrecht did not seek his input on who "to transition" as part of the restructuring of the sales department or about the performance of specific salespeople, and that the firing of Gahman was based on Lambrecht's own observations and judgment.  (Doc. # 25-24 at 35-36).  Defendant next points to a conversation between Lambrecht and Henke, where Lambrecht testified that Henke, who had the most interaction with customers, stated that BST needed to move forward without Gahman because "customers aren't always happy." (Doc. # 25-23 at 48-49).  This sentiment is supported by an email Henke sent to Lambrecht informing him that a customer no longer wished to work with Gahman.  (Doc. # 25-6).  However, customer complaints were not a reason given for Gahman's

termination by BST in its answer to Plaintiff's interrogatories.  (Doc. # 29-12).  This, at the very least, presents a challenge to BST's and Lambrecht's credibility.

Similarly, a reasonable juror could find that the restructuring of the sales department did not motivate Gahman's termination.  The "transition plan" was a plan formulated by Lambrecht, (Doc. # 24-23 at 17-18), and spearheaded by Lambrecht, (Doc. # 24-25 at 28), to create a more technically focused salesforce.  As discussed above, Lambrecht could not describe any notable differences between a "Regional Sales Manager" and a "Technical Sales Manager."  (Docs. # 24-23 at 53-54 and 29-28 at 1).  Defendant has also failed to submit any company records reflecting this transition, apart from the testimony from Lambrecht.  Gahman further testified that Lambrecht did not tell him about a transition to a more technical service team in meetings where Lambrecht suggested Gahman retire.  (Doc. # 25-25 at 58-61).  Taking these facts in the light most favorable to Plaintiff, a reasonable juror could find that the restructuring of the sales department was not the reason for Gahman's termination.

Instead of the above proffered reasons, Gahman argues that his firing was based on his age.  In support of this contention, Gahman testified that Lambrecht stated BST had an aging staff, with several people who needed to retire, and discussed retirement with Gahman multiple times.  (Doc. # 29-9).  A supervisor's questioning about retirement can be sufficient to defeat summary judgment if "the employer initiate[d] the questioning and then pointedly suggest[ed] retirement."  *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997).  The record reflects a dispute of fact as to who initiated the conversation about Gahman's retirement.  Gahman indicates that Lambrecht initiated it in January of 2018, (Doc. # 25-25 at 59-60), and again in August of 2018, where

Lambrecht asked why Gahman didn't want to retire, (*id.* at 68-69).  This appears to be corroborated by an email Lambrecht sent to Gahman stating "[e]arlier this year, you and I talked about the timing of your retirement plans, potentially later this year."  (Doc. # 25-10 at 3).  However, Lambrecht testified that he never used the word "retire" with Gahman.  (Doc. # 25-23 at 29).  This is a disputed fact issue that should be reserved for the jury.  Lambrecht was also the person who ultimately decided to fire Gahman, based on his own observations and judgment.  (Doc. # 25-24 at 35). When comments are made by the individual responsible for a plaintiff's firing, there may be evidence to establish an age discrimination claim.  *Geiger*, 579 F.3d at 620-21.  Further, Gahman has identified that he was replaced by a significantly younger individual, Hocking.

As a final attempt to achieve summary judgment, Defendant invokes the honest belief rule.  (Doc. # 32 at 12).  The rule provides that "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made."  *Blizzard*, 698 F.3d at 286 (quoting *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010)).  To invoke the rule, BST must show "that it made a 'reasonably informed and considered decision' to terminate [plaintiff's] employment."  *Id.* (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).  "Although the employer must point to particularized facts upon which it reasonably relied in making its employment decision, the decisional process used by the employer need not be optimal or leave no stone unturned."  *Hale v. Mercy Health Partners*, 20 F.Supp.3d 620, 631 (S.D. Ohio 2014) (citing *Smith*, 155 F.3d at 807).  Defendant argues that "Lambrecht's consultation with Schneider, Henke, and Vanderpoel was more than sufficient to establish

17

an honest belief in his decision." (Doc. # 32 at 12). The Court finds otherwise. BST, acting through Lambrecht, did not establish an absence of dispute that Lambrecht made a reasonably informed and considered decision. This finding is based on Lambrecht's acknowledgment that he did not work closely with Gahman, and his inability to provide any information he received from Gahman's supervisors that influenced his decision, thereby rebutting the argument that he "consulted" with other supervisors. (Doc. # 25-23 at 42, 47, 48-49). While Lambrecht may have asked Gahman's supervisors if Gahman should be fired, the supervisors did not speak to any particular reason why Gahman needed to be fired in the context of these conversations. (*Id.*). Lambrecht further cites poor technical performance or a transition to a more technical salesforce as a reason for Gahman's termination, but fails to provide any specific examples. (Doc. # 25-23 at 12, 18-19, 23). Ultimately, Lambrecht cannot demonstrate "*particularized* facts upon which [he] reasonably relied" on in making the decision to terminate Gahman. *Hale*, 20 F.Supp.3d at 631 (emphasis added). Therefore, BST is unable to show that it made a "reasonably informed and considered decision" when terminating Gahman because the record does not establish that Lambrecht relied on particular facts underlying Gahman's performance at the time he decided to terminate Gahman. At this stage in the proceedings, Plaintiff has shown a genuine issue of material fact, and Defendant has not successfully invoked the honest belief rule. Therefore, summary judgment is not appropriate.

Accordingly, **IT IS ORDERED** as follows:

(1)    Defendant's Motion for Partial Summary Judgment, (Doc. # 24), is **DENIED**; and

(2)     The parties shall file a **joint status report** within twenty (20) days from the date of entry of this Order indicating whether they would be amenable to a court-facilitated mediation.

This 13th day of September, 2021.



Signed By:

*David L. Bunning*

**United States District Judge**

M:\DATA\ORDERS\Cov2019\19-153 Gahman v. BST NA MOO.docx